Please call the next case. We'll give you a minute for all the lawyers to leave, and we'll accept your comments on the next case, and we'll proceed. The attorneys for the parties, please approach us. We called your case about a minute and a half ago. We understand that you've been busy. For the attorney for the Epelant in this case, please approach the party. Both of you approached, but starting with the Epelant, who are you and who do you represent? James Okasik, Cooney & Conway, for the Appellant Norberg v. Bison. Okay, Mr. Okasik. Epelee? And Andrew Boros, B-O-R-O-S, for the Defendant Epelee. Each side has 15 minutes, so this is a fairly straightforward case. We don't have our watches here, you can tell. We just listened to 55 minutes of argument. But keep it interesting and move it along any time you're ready, Mr. Okasik. Thank you. First of all, good morning to the panel. And I would like to reassure you that I think this is a fairly straightforward case. It's an issue that is seemingly a small evidentiary problem that has become something of a thorn in the side of trial lawyers in personal injury cases as well as the appellate courts. That's the introduction of photographs showing minimal property damage, although it does apply reversely where you have maximal property damage, but mostly it's the use of photographs showing minimal property damage to a vehicle. And the main objective is usually to imply to the jury that there was not enough of an impact to cause the nature and extent of the injury claimed by the plaintiff. In this particular case, we have photographs that did show what they allege to be minimal damage to the car, the rear bumper of the car. Judge Panter, after hearing arguments on motions eliminated to keep them out, decided to allow them. They point out in their brief that at trial, counsel for the trial, for your side, failed to renew their objection as to having lost the motion eliminated. They didn't raise it again. How is it not forfeited? Well, as a trial lawyer sitting there, you're looking at the jury and you're saying, what is going to happen? Do I want to hope that the jury is not going to give this the credence that it deserves from the defendant's standpoint in terms of supporting their argument or not? If you object, you draw attention to it, you run the risk that it's going to raise a red flag and it's going to become an important issue in their mind where you want it to be the other thing. Understanding all the tactical reasons, having been a trial lawyer, how do you get around it? Well, I think that, I mean, first of all, it was not an issue in the post-trial motion. It was not raised below, so there may even be a waiver there. But I think that the rule is not... It was raised in the post-trial motion. It was not in the order and it was not in the reply to my post-trial motion that I recall seeing, because it was not in Judge Panter's written order, typewritten order. But the idea is that you're performing what is essentially a useless act that would delay the trial, it does not change the ruling. The judge had already ruled that they could come in and it was, I mean, I understand that it's something to do. I don't think that it is to have to do a useless act that is not going to change anything. It's another shock to the trial lawyer or trial court to get it correctly, and it would indicate that you haven't changed your mind, and again, maybe not yourself, I don't know if you've tried the case, but we have these obligations as lawyers. Especially, of course, a review, we make them do all sorts of things. You fail to jump through one of our hoops, therefore we can't let you go back, and that's what we do. And I understand that, and that's a strategic... I hope I get a good verdict and not appear before the appellate court, unless it's so good that Mr. Boros has to appeal it, or do I want to stand here today and say, why would the law make me perform a useless act? Yes, there are hoops that have to be jumped through, but they generally have some rationale behind them. To expect that a judge is going to change his mind because you object during the trial, interrupting the flow when he just ruled, I think it was about 45 minutes earlier, you know, is just... Reach your argument, then, don't worry. Yeah, I mean, I, yes, I... So disregard the forfeiture, let's proceed then. How is it the trial court is wrong, and there's many cases, a couple on your side, more on the other side, and who are we to figure it out? This is... I often have sympathy for the panels. We don't need it. You have a very, very hard job in figuring these things out. The cases are all over the place. Any given case that I looked at could have easily gone the other way, and the arguments and the words that are used to justify each decision are the same. In this case, you know, the rule is, and everybody knows the rule, decus solo, it's got to be relevant, and the only way that it can be moved into the relationship between property damage and injury is if there's expert testimony to help the jury understand it. Is that mandated, counsel? Is that mandated by the case law? Well, decus solo seemed to mandate it, but the other cases didn't, and it has been allowed where they said, well, this is allowed because the jury can make this connection without the assistance of an expert. I don't understand that. I don't understand how a jury can make the connection without some testimony from someone qualified to make that connection that gives it to them. Otherwise, all you're doing is allowing the jury to speculate where, you know, six people think one way and six people think the other. The six people who are hardened of heart say, well, if you just get tapped in the rear, you can't possibly get hurt that bad. The six people of softer heart would say, geez, I remember my grandmother. She got hit at, you know, 10 miles an hour, and she was put in a nursing home. You know, the arguments are purely speculative and based not on evidence but on life experience or personal bias. Don't the juries do that, though? Do there are reasonable inferences? Well, reasonable inferences are one thing, but there is no ñ it is not common knowledge that a low-speed accident cannot possibly cause serious injury. We all know a low-speed accident can cause very serious injuries. And it's up to the jury to look ñ I mean, yes, they take their life experiences in there with them, but it's up to the jury to base it on the evidence. And there was no evidence here that the speed of the impact or the nature and extent of the impact had anything to do with the nature and extent of his injury. Nobody connected it at all. There was no doctor, as in, I think it was Baron Mouski, the ñ let me grab it ñ Baraniak case, where, you know, the doctor made some kind of a connection. You know, there's the prior ñ this is why it doesn't make a whole lot of sense, you know. Did the doctor ñ was he doing that or not? Was the fact that the plaintiff had prior injuries, you know, did that allow the jury to look at the photographs and say, oh, well, he probably got hurt worse in those other injuries because the property damage here isn't so much? There just doesn't seem to be a basis from which a jury could even make an inference. Some evidence somewhere, which is, I think, the only thing that you can hang your hat on with the cases that allow the photographs in without expert testimony. The standard of review here is abuse of discretion, is it not? It is, yes. Would you agree with me that these cases coming to the appellate court, the ones determining that it's up to the court's discretion to allow photographs, those were all cases that came before the appellate court based upon abuse of discretion standard. Yes. But you seem to be pitching to us that as a question, as a matter of law, an expert's opinion is necessary before the photograph is allowed. Well, it's, it is a, it is always the discretion of the court for evidence to come in subject to certain ground rules, certain, there are certain foundations that are necessary, there are certain standards that have to be met. And, you know, first thing evidence has to be is relevant. Well, where did the trial court abuse its discretion here? The court would have had discretion to allow the photographs in if there were expert testimony that connected the two. So you're now saying as a matter of law, the expert's testimony was necessary. He, no. If they had expert testimony, he could have gone either way. It would have been his discretion. They met the standard by having expert testimony to make the connection from which the jury could either believe or not believe the evidence or make inferences. He would have the discretion still to keep them out or put them in because there are other factors in, in looking at photographs for him to determine will these help the jury decide a relevant material issue in this case. In my case, there was no relevant or material issue to be decided by the photographs to begin with. Well, generally photographs would indicate or could indicate. The argument by the other side was the trial court found to be correct was that there is always a dispute in these cases. That's why we have jury trials. So the amount of the impact. And so while you assert in your brief that there was no dispute about the speed, well, the defendants only let her foot slip off but it's still enough to harm your client. Well, your client said it was a very heavy impact. It was a testimony. And so wouldn't the photographs tend to, that's a phrase I use, tend to support the amount of impact? My response to that is even though my client said heavy impact, his testimony was based on definitions of those terms that were given by Mr. Boros. Light impact was you hardly noticed it. Medium impact was you knew you'd been hit. And heavy because he was pushed forward. And that's what he testified to. Did he say his arms flew up? He said his arms did fly up. Nobody said that didn't happen. And there was, you know, damage to the back of the car. I mean, there was damage on the bumper. Now, what does that mean in terms of how heavy the impact could have been? You know, could you have that? I mean, this is where the expert comes in. Well, but it would, for us to agree with you, wouldn't we have to hold then essentially that in these, and this is not a small claim case. It's one of our law jury cases. But, frankly, a fender bender case. There were probably thousands of them last time I looked. I was picked for a jury once. I was almost picked for a jury on a fender bender. To set up the, it's so high that if they want to use photographs, they must have an expert. I don't know if there's any crying from either the plaintiff's part or the defense part. I think that's a good idea that before we allow photographs in, there must be an expert to testify on either side. Whoever's offering it, they have to have a defense expert to say, oh, I can tell you from this photograph that this guy could not have been hurt. I don't want to do that. Well, an expert can be anyone with particularized knowledge. Most of the cases that allowed the photographs in where there was supporting testimony, it was not that the defendant went out and hired an expert. It was that the treating doctor gave some testimony that related it. And sometimes that's all you need. Otherwise, if you don't have anybody who says that, if you don't have somebody who says, you know what, there is a direct relationship between what happened to this guy physically and the nature and extent of his injuries, there's a break there somewhere. Something else happened. And you have it in cases where you have preexisting injuries. You know, fine, you had a preexisting injury. The doctor testifies this is what it was. The defendants raise that up. You know, they highlight that testimony. They don't have to go out and get their own guy. They use the plaintiff's treating doctor and argue he's not that hurt. He had all these problems beforehand. Where is that evidence when you just show a photograph? Well, what's this expert going to say? Oh, I looked at the photograph. Oh, that's a hell of a crash. Does a jury need an expert to tell them that? Or contrary, a photograph with minimal, minimal damage, very slight impact, slight crash. Why do we need an expert to say that before we can bring in the photograph? Somebody has to say that that has something to do with the injury. Let's say that it was a minor impact, but the plaintiff, I had a case like this once, the plaintiff was in the front seat leaning forward. We have enough experts in trials as it is. Well, but you don't have to get another guy. To tell the jury the obvious. But is that obvious? Is it obvious that when it was only a 5-mile-an-hour impact or a 10-mile-an-hour impact, the plaintiff could not have had a ruptured disc in her neck? Is it obvious that? There's a panel of photographs. You have a file. They have a file. And you look at it and you see in this case there's very, very little damage done by the rental car to your client's car. And you say, well, you know, I better have somebody come in and explain. Either an expert about the, you know, which is, our court is just as, as far as the plaintiff, tend to frown on the idea of somebody being able to say things about car accidents. But to say that, boy, my guy has a bulging disc and that could come from this small impact. I mean, it's your burden. Right, right. And it's abuse of discretion standard. How can we write something that doesn't say abuse of discretion? You get to pick. I think, as I said to Justice Harris, I think there's a foundation. I think that the discretion kicks in after you've met the foundation. When you haven't met the foundation and you exercise your discretion, you've abused your discretion. And I think that's the standard for abuse of discretion, pretty much. Most judges do not make horrible decisions abusing their discretion to let something in, you know. Counsel, can I ask you, didn't she testify, the defendant? The defendant did testify, yes. She said all I did was take my foot off the brake. Right. So we're not even talking about 5, 10 miles per hour. Well, I think she might have estimated her, in her testimony, she might have estimated her speed at 5 miles an hour. But her... That testimony was before the jury. Him saying it was hard, I don't know which term he used, but Justice Kline used it. That he was pushed forward. Right. She didn't say he wasn't pushed forward. You know, and I mean, her credibility is as much at issue as his, you know. If your foot just slipped off the brake, you know, I mean, let's say I had a, you know, a better dent and everything like that, and I want to say, well, you know, her foot didn't slip off the brake, you know. Right. That's not the issue at trial, though. The issue is not did her foot slip off the brake or not. The issue is not was it 5 miles an hour or 20 miles an hour. The issue is are these medical damages and these injuries related to this accident? There was nobody, there was no doctor who said he's a baby, he's faking it, he's complaining about things he couldn't possibly have. You have a bulging disc here. Bulging. What were the specials? They were approximately $20,000. So $7,500 is not enough. $5,000 was given for medical, $1,000 for pain and suffering, and $1,500 for loss of a normal life. Well, why don't you say some tough reply, and we'll hear from Forrest. Thank you. Thank you. Good morning. Once again, Andrew Boros on behalf of the defendant, Eppley. I also think this is a very straightforward case on a couple different grounds. First of all, clearly there was waiver in this case. Counsel, trial counsel filed their motion to eliminate number 12, seeking to bar the jury from, or seeking to bar counsel from taking the case. Seeking to bar counsel from showing the jury the photographs. When the photographs then were, decided to be introduced during the plaintiff's testimony, there was no objection at that point. When defense counsel sought to publish the photographs to the jury at that time, there was no objection at that point. I think it's very important that, I think it's required that that be done. The case is clear that we set it in our brief, and the cases are clear that simply filing the motion to eliminate is not sufficient. There has to be an objection made at the time that the evidence is sought to be introduced. There had to be an objection at the time that the photographs were sought to be published to the jury, which was at that point. And there had to be an objection also at the time that the photographs went back to the jury at the end of the trial. I don't think it's a useless act. I think it's an act that's required under the law to preserve the appeal, and that was not done in this case. I think on that basis, their appeal stops at that point. However, moving on to the merits, it's an abuse of discretion standard, clearly, and clearly the trial court indicated in detail the reasons why the photographs were relevant, why they were coming into evidence, why the jury should see them. And one thing that's been touched on is prior to any of the photographs coming into evidence or even being sought to be put into evidence, the plaintiff himself testified on direct exam that he was propelled forward with his hand going up into the air, and the defendant did then testify afterwards that she was at a stop, took her foot off the brake, the car did not accelerate, but she went forward, struck the plaintiff's car, a very light impact, less than five miles per hour was her testimony. So clearly there's an issue as to how the car accidents occurred in terms of the impact, the severity of the impact, the characterization. These are all important facts. These are facts that the jury wants to hear, that the jury needs to hear. And also, when the plaintiff does testify that he was propelled forward with his hand going up in the air, when Dr. Sklandberg testifies that the plaintiff told him that the accident occurred at quite a high velocity, and also Dr. Sinai testified that the plaintiff told him that the plaintiff was taken from the scene to the emergency room, this is one piece in the puzzle in showing the jury that, no, the plaintiff here, which I indicated in closing arguments as well as in the brief, the plaintiff here is engaged in a pattern of exaggeration, and this is one of the pieces in the puzzle to show the jury that, yes, this is what's going on here. The trial judge was clear. There's an issue about what he termed the amount of the impact. There's an issue as to what happened to the plaintiff during the impact. There's Dr. Sklandberg's testimony. Also, the trial judge was very clear that as there's no expert testimony in the case, there's not to be any argument. And I think this is the right way to go. I think it's the safe way to go when you look at the DiCosola case and the other cases. I think this is definitely the safe way to go when there is no expert to say, no, you cannot argue that there's a correlation. Whether that's required in the case, I don't think so. But I think that is the safe way to go so that the DiCosola case is not violated. But in this case, there's no expert testimony, so there was no argument. There was no specific argument that there was a correlation. What the picture showed, the picture showed was that there is an issue as to how the accident happened. You should also take a look at everything else the plaintiff says. This is a case where neither of the two medical providers testified to an opinion within a reasonable degree of medical certainty that the plaintiff was injured in this accident. So all we have to go off of in this case is the plaintiff's own credibility. You know, the cases are, they are all over the place. I think that's because they're based on the specific facts of the case. So you're not going to have cases that are identical. They come down to the fact that the trial judge is given the discretion to admit the photograph if he or she deems it relevant and admissible under all of the cases. The trial judge in our case did that. That, I think, was extremely explicit in terms of why it's coming in and what can be done in terms of arguments. And clearly we see no abuse of the discretion. Thank you. Thank you. Briefly, if you have anything, Mr. O'Kessing. Well, I'd just like to again, in the issue of waiver, just point out that it was not raised in the post-trial motion. So maybe there's a waiver of that issue, too, on appeal. Did you try the case, sir? I did. Okay. Crib to crib. Thank you so much. This case will be, do you have anything else? I'm sorry. I just want to say. We appreciate your forthrightness. Just, if, two things I don't think make a pattern of exaggeration. And one of which was true. He did go from the scene to the emergency room, but he went home. His mother took him right to the emergency room when he went home. I mean, he was on his way home at the time. Trying to string this through the testimony of the two doctors, I think, is kind of a far reach. If you can't argue a correlation between minimal impact and injury, then how is it relevant? I mean, what is it relevant to? It's not relevant to anything. I mean, even in Mr. Boros's argument here, he's talking about trying to minimize the injury because the impact wasn't enough. It's not about how the accident happened. It was a rear-ender accident. Was your expert asked, the expert you brought in, did he provide an answer as to the injuries being approximately caused by this incident, notwithstanding what these pictures show? He gave an opinion that the injuries were caused by the accident. He was not shown the photographs. The doctors testified by evidence deposition, taken long before the issue of photographs even came up, which was during the trial. I thank the Court. I appreciate how much fun you have with these abuse of discretion cases on these kinds of things. Thank you very much. This case will be taken under advisement and this Court will be adjourned.